**SIGNED THIS: March 09, 2006**

                                           */s/ Mary P. Gorman*
                                           **MARY P. GORMAN**
                                           **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | In Bankruptcy |
| ROBERT D. McELROY and | ) | |
| BARBARA A. McELROY, | ) | Case No. 05-78139 |
| | ) | |
| Debtors. | ) | |

# O P I N I O N

The issue before the Court is the valuation of two vehicles - a 2003 Ford F150 Flareside Supercab XLT pickup and a 2002 Ford Explorer Limited V6 - for purposes of cramdown in a Chapter 13 plan. Cramdown is the bankruptcy procedure which allows a debtor to keep collateral and pay the present value of the allowed secured

claim over the life of the plan.[1]  11 U.S.C. §506(a); § 1325(a)(5).

The Debtors, Robert and Barbara McElroy, filed a petition pursuant to Chapter 13 of the Bankruptcy Code on October 16, 2005. The Debtors' Chapter 13 Plan valued a 2003 Ford F150 at $15,400 and a 2002 Ford Explorer at $10,000.  The Plan proposed to pay 0% interest on the F150 and 8% interest on the Explorer.  Ford Motor Credit Company ("Ford"), which holds liens on the two vehicles, filed an objection to the Debtors' Chapter 13 Plan.  Ford objects to both the valuations and the interest rates.  In its objection, Ford valued the F150 at $19,650 and the Explorer at $17,700.  Ford seeks 9% interest on both vehicles.

A valuation hearing was held on February 7, 2006.  Nelson Aumann testified for the Debtors.  Mr. Aumann has been an appraiser and auctioneer for 44 years.  He is based in Nokomis, Illinois.  He conducts approximately 100 auctions per year, 35 to 40 of which involve vehicles.

Mr. Aumann testified that, in appraising a vehicle, he looks at the mileage, condition, tires, and wheels.  He also usually starts the engine and drives the vehicle.  In this case, he saw the vehicles and heard the engines run, but he did not drive them.  Mr.

---

[1] The use of the cramdown procedure has been limited under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. For cases filed on or after October 17, 2005, § 1325 now provides that § 506 does not apply to purchase money debts incurred within 910 days before the case was filed.  This change in the law does not apply here because this case was filed before the effective date of the new law.

Aumann did not see anything in these vehicles which would distinguish them from other vehicles of similar age and mileage.

In determining a value for a vehicle, Mr. Aumann consults the National Automobile Dealers Association (NADA) guide, Hotline, and his own experience in selling vehicles at auction.  Although NADA is the widely accepted authority for vehicle values, In re Bouzek, 311 B.R. 239, 243 (Bankr. E.D. Wis. 2004); In re Henderson, 235 B.R. 425, 429 (Bankr. C.D. Ill. 1999), Mr. Aumann described the NADA values as too high.  Instead, he relies more on Hotline, a source unknown to this Court and not cited as a recognized source for vehicle valuations by any reported bankruptcy decisions.  Mr. Aumann also relies on his experience, but he admitted that his experience with used vehicles is limited.  He has never owned or worked at a used car lot.  He does not have any particular training, degrees, or certifications regarding vehicle appraisals. In the past year, he sold one Ford Explorer and one Ford F150.

Ford objected to Mr. Aumann's qualifications as an expert on the value of used vehicles.  "A trial court has wide discretion in determining the admissibility of expert testimony, especially when the issue is being tried directly to the bench."  Palmacci v. Umpierrez, 121 F.3d 781, 791 (1st Cir. 1997).  The Court finds that Mr. Aumann has the bare minimum of qualifications necessary to be considered an expert under Rule 702 of the Federal Rules of Evidence.  However, Mr. Aumann's lack of strong credentials will

affect the weight to be given to his testimony.  *Russell on Evidence* § 702.2, p. 1118.

Mr. Aumann submitted a written appraisal on each vehicle.  The appraisals contained a photo of each vehicle, the inspection date, the make and model of the vehicle, and the mileage of the vehicle.  Mr. Aumann did not include excerpts from NADA, Hotline, or any publication regarding the vehicles.  He did not include any information about comparable sales.  There is nothing in the appraisals which would suggest a reason to deviate from the NADA values.  Mr. Aumann valued the Explorer at $10,000 and the Ford F150 at $16,000.

Ford relies solely on the NADA retail value for the vehicles.  The NADA base retail for a 2003 Ford F150 pickup in the central region is $17,150.  The NADA adds a $275 mileage adjustment because the vehicle has only been driven 38,600 miles.  Thus, the NADA retail value is $17,425 for the F150.  The NADA base retail value of a 2002 Ford Explorer V6 is $15,675.  The NADA adds a $800 mileage adjustment because the vehicle has been driven 35,000 miles.  Thus, the NADA retail value for the Ford Explorer is $16,475.  Ford's suggested NADA retail values for the two vehicles did not include any adjustments for accessories or optional equipment.

The Debtors objected to the admissibility of the NADA data.  However, Rule 803(17) of the Federal Rules of Evidence provides a

hearsay exception for "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations." The NADA fits well within this hearsay exception. Bouzek, *supra*, 311 B.R. *at* 243; In re Smith, 307 B.R. 912, 917 (Bankr. N.D. Ill. 2004), *rev'd on other grounds*, 313 B.R. 267 (N.D. Ill. 2004). Bankruptcy courts in the Central District of Illinois have long recognized the NADA guide as "the authoritative source that is most relevant and applicable to the valuation" of vehicles in Chapter 13 cases. In re Madsen, 2001 WL 34076428 (Bankr. C.D. Ill.) (Perkins, J.); In re Knight, 254 B.R. 227, 228 (Bankr. C.D. Ill. 2000) (Fines, J.); In re Henderson, *supra*, 235 B.R. *at* 429 (Altenberger, J.); In re Gill, 1996 WL 33406075 (Bankr. C.D. Ill.) (Lessen, J.).

Replacement value, rather than liquidation value, is the appropriate valuation standard for cramdown in Chapter 13 proceedings. Associates Commercial Corp. v. Rash, 520 U.S. 953, 956, 117 S.Ct. 1879 (1997). Replacement value is not, however, necessarily synonymous with retail value: "[W]here the proper measure of the replacement value of a vehicle is its retail value, an adjustment to that value may be necessary:  A creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning." Rash, *supra*, 520 U.S. *at* 964, n. 6, 117 S.Ct. *at*

1886.  In addition, the market to which debtors may look to replace a vehicle is not limited to the retail market.  In re Glueck, 223 B.R. 514 (Bankr. S.D. Ohio 1998); In re McElroy, 210 B.R. 833, 835 (Bankr. D. Or. 1997).  Many courts use as their starting point for determining a vehicle's replacement value the average of a car's wholesale and retail values, subject to appropriate adjustments according to other evidence of value introduced by the parties.  In re Getz, 242 B.R. 916, 919 (6th Cir. BAP 2000); In re Lyles, 226 B.R. 854, 856-57 (Bankr. W.D. Tenn. 1998); In re Oglesby, 221 B.R. 515, 519, 523 (Bankr. D. Colo. 1998); In re Younger, 216 B.R. 649, 656-57 (Bankr. W.D. Okla. 1998).  One court has a local rule that says that the value of a vehicle is 95% of the NADA retail value for the first three years of age if neither party presents any conflicting evidence.  In re Mitchell, 320 B.R. 687, 689 (Bankr. E.D. Mo. 2004).[2]

The Court finds the values placed on the vehicles by Mr. Aumann to be unreasonably low.  Although a live witness is often better than a published compilation, Mr. Aumann's reliance on the unknown Hotline rather than the well-respected NADA undercut his

---

[2] To the extent cramdown remains available under Chapter 13, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 provides a definition of replacement value. Replacement value is "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."  11 U.S.C. § 506(a)(2).  Again, the new law does not apply to this case and, accordingly, this definition does not control how replacement value is determined for the vehicles in this case.

testimony.  Mr. Aumann failed to offer any explanation as to why the vehicle valuations should deviate from the published values. He testified that the vehicles had the regular scratches and dings to be expected of vehicles of that make and model year, but he did not find any body damage, mechanical problems, or any other reason why his values should be different from the NADA values.

On the other hand, the NADA retail values proffered by Ford may be too high.  In re Gonzalez, 295 B.R. 584, 587 (Bankr. N.D. Ill. 2003) (Prices in NADA are typically higher than Black Book or Kelley Blue Book because NADA prices do not vary with the vehicle's condition). The NADA values may include warranties, reconditioning, and other services not directly related to the actual value of the vehicle.

In the absence of evidence of the markup for services or the profit margin which might be included in the NADA tables for the Debtors' vehicles, the Court finds that a 5% discount from the NADA retail values presented would be appropriate to determine the vehicles' replacement value for purposes of cramdown. Accordingly, the 2003 Ford F150 pickup is valued at $16,553.75.  The 2002 Ford Explorer V6 is valued at $15,651.25.

Nothing in this Opinion should be construed as limiting the ability of debtors or creditors in other cases from presenting appraisals of vehicles which differ from the NADA published values. The Court recognizes that vehicles which are damaged or have been

subjected to excessive wear and tear may have diminished values which would not be accurately reflected in the NADA tables. Likewise, vehicles with custom equipment or decorating might have enhanced values also not reflected in the NADA tables.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###